UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Scott Malcolm, Tim McGough,  
Michael Gavanda, Gary Larson,  
Jeff Jewett, and John Nakasone,

Civil No. 06-4155 (PAM/JSM)

Plaintiffs,

v.

**MEMORANDUM AND ORDER FOR JUDGMENT**

Franklin Drywall, Inc., Master Drywall, Inc., and Philip J. Franklin,

Defendants.

---

This matter was tried to the Court on December 8, 2008. At issue is Plaintiffs' claim that Defendant Philip Franklin ("Franklin") should be held personally liable for amounts owing from Defendants Franklin Drywall, Inc. and Master Drywall, Inc. to Plaintiffs, trustees of several union fringe benefit funds. At the conclusion of the bench trial, the Court issued an oral ruling in favor of Franklin. This written memorandum accords with that ruling and provides a more robust account of the Court's findings of fact and conclusions of law.

**BACKGROUND**

Plaintiffs are trustees of a number of funds that provide fringe benefits—such as health, pension, and vacation benefits—for members of participating unions and trades (collectively, the "Funds"). The Funds operate using contributions from employers. Under a collective bargaining agreement, an employer calculates the total contributions it owes to the Funds based on the hours worked by union and non-union employees. The Funds collect the contributions and conduct audits to ensure accurate reporting.

Defendants Franklin Drywall, Inc. and Master Drywall, Inc. were Minnesota corporations engaged in the construction business. Franklin Drywall was in operation from 1988 to September 2007. Defendant Philip J. Franklin is the sole director, officer, and shareholder of Franklin Drywall. Franklin's wife, Juliet, owned Master Drywall.

Plaintiffs sought and ultimately were awarded a default judgment against Franklin Drywall and Master Drywall in the amount of $1,194,179.30 for delinquent fringe benefit contributions and liquidated damages. At trial, Plaintiffs sought to establish Franklin's personal liability for the default judgment by piercing the corporate veil.

**DISCUSSION**

**1.      Piercing the Corporate Veil**

Ordinarily shareholders of a corporation are shielded from personal liability for the debts or obligations of the corporation. See Gunderson v. Harrington, 632 N.W.2d 695, 704 (Minn. 2001).[1] In limited circumstances, however, a court may disregard the corporate entity, or pierce the corporate veil, and hold a shareholder personally liable for what would otherwise be the debt solely of the corporation. Piercing the corporate veil is a remedy available when the corporate form is used to commit fraud, or when the corporation is operated as the "alter ego" of the sole shareholder. Victoria Elevator, 283 N.W.2d at 512.

Victoria Elevator outlines a two step approach for the alter ego theory. First, the court considers the relationship of the shareholder to the corporation, and the extent to which the

---

[1] Although a personal guaranty would provide direct contractual liability for the debts of Franklin Drywall, Franklin never signed such a guaranty in favor of Plaintiffs.

corporation was operated as a separate legal entity. Id. The court is to consider the following factors:

> insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

Id. If these factors weigh in favor of finding a shareholder personally liable, the court is then to consider whether shielding the shareholder from personal liability would result in "injustice or fundamental unfairness." Id. The Court finds that Plaintiffs have failed to establish that any of the factors in step one militate in favor of finding Franklin personally liable.

### A. Insufficient Capitalization

Any time a business becomes insolvent there is a capitalization problem. But the multi-factor analysis required by Victoria Elevator clearly does not intend for a shareholder to be held personally liable for corporate debts simply because the corporation has become insolvent. This factor does not weigh in favor of holding Franklin personally liable to Plaintiffs for Franklin Drywall's debts.

The evidence showed that Franklin Drywall's financial woes stemmed primarily from credit and cash-flow problems, rather than from undercapitalization. Franklin Drywall began using an asset-based lender—ACRO Business Finance ("ACRO")—in 2003 in an effort to expand Franklin Drywall's business. ACRO filed for Chapter 11 protection in 2006. Shortly

thereafter, ACRO stopped extending credit to Franklin Drywall. Franklin Drywall, however, had continuing obligations to employees, landlords, and suppliers. Franklin Drywall began depositing receivables in a bank account that ACRO could not access in an effort to have the cash it needed to meet its obligations, but those efforts ultimately failed. These actions by ACRO, coupled with the downturn in the construction market at about the same time, caused significant financial hardship for Franklin Drywall and ultimately led to its insolvency. Franklin Drywall was unable to find another asset-based lender to help it operate, in large part because of the current lawsuit.

Franklin Drywall's use of an asset-based lender does not necessarily mean that the corporation was undercapitalized. Rather, as Franklin testified, Franklin Drywall's relationship with ACRO allowed Franklin Drywall to expand its business and capture a larger share of the growing market. ACRO's bankruptcy and liquidation essentially froze Franklin Drywall's cash flow and led to the company's demise. There is no evidence, however, that Franklin Drywall was ever undercapitalized, such that Franklin should be held personally liable for Plaintiffs' default judgment against his company.

### B.   Corporate Formalities

The Court is troubled by the fact that Franklin Drywall's corporate record book and other basic corporate documents were not produced at trial and put into evidence. Franklin testified that Franklin Drywall's former attorney has the record book and other documents. Plaintiffs argued that they requested the records' production during discovery, but the records were never produced. The lack of corporate records in evidence notwithstanding, the Court

finds that Franklin Drywall was operated formally as a separate entity, and that this factor does not weigh in favor of finding personal liability on the part of Franklin.

Both Plaintiff and Franklin introduced into evidence the accounting records of Franklin Drywall. Franklin Drywall employed certified public accountants and a controller to handle its finances. Franklin's father made two loans to Franklin Drywall, and those loans were documented in writing. Franklin Drywall eventually made two payments to Franklin's father for the loans to the corporation, and those payments were properly recorded. There is nothing improper about these payments, especially in light of the fact that they were documented and recorded.

Franklin Drywall paid $8,000 a month to lease two commercial properties from Franklin, who personally owned the properties. Franklin relied on the advice of his accountants when structuring the lease agreement between himself and Franklin Drywall. Franklin also reported the lease payments as income on his personal tax returns. There was nothing improper about the lease arrangement between Franklin and Franklin Drywall, again where each transaction was documented and recorded.

Despite the lack of corporate records before the Court, there is substantial evidence from testimony and accounting records that Franklin Drywall was operated in a formal manner as an entity separate from Franklin himself.

### C. Nonpayment of Dividends

Franklin, as sole shareholder of Franklin Drywall, was paid approximately $500,000 in distributions, or dividends, from 2004 through 2007. A significant portion of those

distributions were used to pay personal and pass-through corporate taxes.[2]  Several checks were issued directly from Franklin Drywall to Franklin's ex-wife for Franklin's personal obligations of spousal and child support.  Franklin testified that those amounts were treated as distributions to him and were properly accounted for as such on Franklin Drywall's books.  The Court credits Franklin's testimony.  The dividends paid to Franklin were proper and accounted for.  Therefore, this factor does not weigh in favor of piercing the corporate veil.

### D.     Insolvency

Except for a small loss in 2004, Franklin Drywall was profitable each year until 2006.  Due to accounting cycles and the downturn in the construction market in 2006, Franklin did not become aware that the corporation was not profitable in 2006 until the spring of 2007.  Any distributions made before Franklin knew the company was operating at a loss cannot be the grounds for piercing the corporate veil.  Distributions made subsequent to Franklin discovering the company was insolvent were made under the supervision of ACRO, which had a perfected security interest in the assets of Franklin Drywall.  There is no evidence that Franklin unjustly benefitted from distributions made to him by Franklin Drywall while the latter was insolvent.

### E.     Siphoning

As noted above, each of the transactions that Plaintiffs argued had "siphoned" funds out of the company in favor of Franklin were proper and accounted for.  Although there were

---

[2] Because Franklin Drywall was an S-corporation, Franklin was personally subject to pass-through taxation for any tax gains by the corporation.

multiple transactions between Franklin, Franklin's family, and Franklin Drywall, there was nothing improper about any of those transactions. Franklin Drywall's payment of Franklin's spousal and child support obligations certainly gave the Court pause, but as noted above, those payment were treated as distributions to Franklin. There is no evidence of siphoning funds.

### F.     The Remaining Factors

The non-functioning of other officers and directors is inapplicable here because Franklin was the sole officer and shareholder of Franklin Drywall. The basic corporate documents were not produced to the Court, but the Court finds that Franklin's unrefuted testimony about the records' existence, coupled with the detailed financial records that were introduced into evidence, argue against piercing the corporate veil for failing to keep corporate records. Finally, in light of the above discussion, the Court finds that Franklin Drywall was not operated merely as a facade for Franklin's personal dealings. Franklin operated Franklin Drywall as a separate entity. Without some direct method of holding Franklin personally liable, Franklin Drywall, and Franklin Drywall alone, is liable to Plaintiffs for the default judgment they obtained against the company.

### G.     Master Drywall

Master Drywall was started in 2004. It's sole shareholder was Franklin's wife, Juliet, and was operated out of the Franklins' home. Master Drywall performed subcontract work on behalf of Franklin Drywall for which it was compensated. There is no evidence to suggest that any of these payments were improper or that they occurred simply to siphon money out

of Franklin Drywall. The Court finds no evidence to support holding Franklin liable for the debts of Master Drywall, a corporation of which Franklin is neither a shareholder nor officer or director.

Having found no justification for piercing the corporate veil in the first part of the Victoria Elevator test, the Court declines to consider whether piercing the veil is required to avoid injustice.

**CONCLUSION**

Under the Victoria Elevator test, the Court concludes that there are no grounds that require or justify piercing Franklin Drywall's or Master Drywall's corporate veils to hold Franklin personally liable for the corporations' obligations to Plaintiffs. Plaintiffs have obtained a judgment and are entitled to enforce that judgment within the bounds of the law, but must do so only against the corporations themselves and not against Franklin personally.

Accordingly, **IT IS HEREBY ORDERED** that judgment is entered in favor of Defendant Philip Franklin on Plaintiffs' claims that he is personally liable for the judgments against Defendants Franklin Drywall and Master Drywall.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 12, 2009

/s Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge